UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| ANDREW DWIGHT KNODE,<br><br>Plaintiff,<br><br>vs.<br><br>OFFICER JOSEPH ERICKSON, in his individual and official capacity, OFFICER KYLER PEKAREK, in his individual and official capacity, and STATE OF SOUTH DAKOTA,<br><br>Defendants. | 4:19-CV-04181-KES<br><br><br>ORDER GRANTING PLAINTIFF'S MOTION TO PROCEED IN FORMA PAUPERIS AND 1915A SCREENING |

Plaintiff, Andrew Dwight Knode, filed a pro se civil rights lawsuit under 42 U.S.C. § 1983. Docket 1. He filed an amended complaint and a supplement. Dockets 3, 8. Knode moves for leave to proceed in forma pauperis and included his prisoner trust account report. Dockets 4, 5. He also moves for appointment of counsel and for copies. Dockets 6, 7.

I.  **Motion to Proceed In Forma Pauperis**

Knode reports average monthly deposits of $0.00 and an average monthly balance of *negative* $159.86. Docket 5. Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). " '[W]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan.' " *Henderson v. Norris*, 129

F.3d 481, 483 (8th Cir. 1997) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of:

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

28 U.S.C. § 1915(b)(1)(A-B). Based on the information regarding Knode's prisoner trust account, the court grants Knode leave to proceed in forma pauperis and waives the initial partial filing fee. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

In order to pay his filing fee, Knode must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

28 U.S.C. § 1915(b)(2). The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Knode's institution. Knode remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler,* 110 F.3d 528, 529-30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background

The facts alleged in Knode's complaint are: that on January 17, 2018, Knode was pulled over by Yankton Police Officers Joseph Erickson and Kyler Pekarek. Docket 3 at 3. The traffic stop was based on a tip of dangerous driving, and Knode was arrested for driving under the influence. *Id.* Erickson asked Knode to voluntarily give a blood sample; Knode refused. *Id.*

Erickson applied for a search warrant (for the blood sample), and it was signed by the Honorable Patrick Smith. *Id.* Erickson's police report notes that Knode was taken to the Avera Sacred Heart Emergency Department in Yankton, and a Medical Technologist took two vials of blood from Knode's body. *Id.* Erickson then placed the samples in a secure locker at the Yankton Safety Center. *Id.* Knode claims the affidavit for search warrant, the search warrant for blood draw, and the verified inventory were never notarized or filed. *Id.* Knode denies that he submitted to a blood test; he claims that the blood sample submitted as evidence against him was not his blood. *Id.* at 4. Knode claims that he did not leave his holding cell after he was arrested and that he did not have any bandages or puncture wounds from a blood draw. *Id.*

The original DUI charge, that was derived from the alleged false blood sample, was later "left out of the grand jury indictment." *Id.* at 5. Knode pleaded guilty to charges "unrelated" to the blood sample. *Id.* Knode has spent money and time preparing his legal documents to fight the falsified evidence. *Id.* at 6. The falsified evidence has caused Knode stress, anxiety, illness, and insomnia. *Id.* Knode believes the falsified evidence "potentially ruined [his] career as a delivery driver. . . . [and] affected [his] liberty." *Id.* Knode's bond amount was higher and his detainment was longer due to the falsified evidence. *Id.* He seeks monetary damages from each defendant, injunctive relief, a declaration that the officers violated his rights, and for Erickson to resign and be charged for falsification of evidence. *Id.* at 7.

Knode includes the evidence report of the Yankton Police Department that notes two blood samples were taken from Knode's body on January 17, 2018, at Avera Sacred Heart Hospital Emergency Department and then sent to the State Health Lab. Docket 8 at 2. The blood samples were returned to the police department and placed in fridge locker #88. *Id.* The South Dakota Department of Corrections Offender Locator notes that Knode was sentenced on October 31, 2019, for Possession of a Controlled Substance (Schedule I and Ii).[1]

---

[1] South Dakota Department of Corrections, https://doc.sd.gov/adult/lookup/ (last visited Apr. 20, 2020) (searching Andrew Knode, DOC #1481).

### B.     Legal Standard

The court must assume as true all facts well pleaded in the complaint. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Civil rights and pro se complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004). Even with this construction, "a pro se complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013). Civil rights complaints cannot be merely conclusory. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir. 1993); *Parker v. Porter*, 221 F. App'x 481, 482 (8th Cir. 2007).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If it does not contain these bare essentials, dismissal is appropriate. *Beavers v. Lockhart*, 755 F.2d 657, 663 (8th Cir. 1985). *Twombly* requires that a complaint's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 555; *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (noting that a complaint must contain either direct or inferential allegations regarding all material elements necessary to sustain recovery under some viable legal theory). Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they are

"(1) frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now assess each individual claim under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1. Claim Against the State of South Dakota and Official Capacity Claims

Knode lists the state of South Dakota as a defendant and seeks monetary damages. Docket 3 at 1, 7. Damages claims against the State are barred by the Eleventh Amendment, unless South Dakota consented to suit or Congress abrogated its immunity. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985) (holding absent waiver by the State or valid override by Congress, "the Eleventh Amendment bars a damages action against a State in federal court."). The state of South Dakota has not waived its Eleventh Amendment immunity for damages actions in federal court and Congress has not abrogated South Dakota's Eleventh Amendment immunity under § 1983. Thus, all claims for monetary damages against the state of South Dakota are dismissed.

Knode sues Erickson and Pekarek, police officers for the Yankton Police Department, in their official capacities. Docket 3 at 2. "A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Knode's official capacity claims against Erickson and Pekarek are the equivalent to claims against the City of Yankton.

A municipal government may only be sued "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," deprives a plaintiff of a federal right. *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Because Knode does not claim that policies or customs of the City of Yankton are depriving him of his rights, his claims against Erickson and Pekarek in their official capacities are dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(i-ii) and 1915A(b)(1).

### 2. Individual Capacity Claims

Knode sues Erickson in his individual capacity and claims that he fabricated evidence against Knode. Docket 3 at 2, 4. "Intentionally or recklessly . . . manufacturing false evidence may shock the conscience and can violate the Fourteenth Amendment's due process clause." *Livers v. Schenck*, 700 F.3d 340, 351 (8th Cir. 2012) (citing *Winslow v. Smith*, 696 F.3d 716, 731 (8th Cir. 2012); *Wilson v. Lawrence Cty.*, 260 F.3d 946, 955-57 (8th Cir. 2001)). Knode notes in his complaint that he pleaded guilty to charges "unrelated" to the blood sample. *Id.* at 5. Knode was sentenced for Possession of a Controlled Substance (Schedule I and Ii). Because Knode claims that he never gave a blood sample and that Erickson submitted false evidence to support a DUI charge, Knode has alleged sufficient facts for his Fourteenth Amendment due process clause claim against Erickson to survive screening.

Knode sues Pekarek in his individual capacity. Docket 3 at 2. Although Pekarek is named as a defendant, Knode merely asserts that Pekarek helped

7

Erickson with the stop and arrest. *Id.* at 3. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcrof v. Iqbal*, 556 U.S. 662, 676 (2009). Because Knode does not assert facts that allege Pekarek participated in unconstitutional conduct, his claims against Pekarek are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### III. Motion for Appointment of Counsel

Knode moves for appointment of counsel. Docket 6. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." When determining whether to appoint counsel to a pro se litigant, the court will look at the factual and legal complexity of the claims. The Eighth Circuit considers "the factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citing *Johnson v. Williams*, 788 F.2d 1319, 1322-23 (8th Cir. 1986) (holding that the district court erred when it denied the plaintiff's motion for counsel solely because the plaintiff did not raise factually complex issues)). Here, Knode's claims do not appear to be factually or legally complex. Because this

court believes Knode can adequately present his claims at this time, his motion for appointment of counsel (Docket 6) is denied.

## IV. Motion for Copies

In his motion for copies, Knode asks this court to enter an order that forces the South Dakota Department of Corrections (SDDOC) to change their limit on the number of copies they allow. Docket 7. He also asks this court to allow him to send his original copies of future filings to the Clerk of Court and have service be by email. *Id.* This court grants in part and denies in part Knode's motion. Knode may fulfill service by email after the complaint is served (after Knode fills out the necessary service forms) but denies entering an order forcing the SDDOC to change their policy.

Thus, it is ORDERED:

1. That Knode's motion to proceed in forma pauperis (Docket 4) is granted.

2. That the institution having custody of Knode is directed that whenever the amount in Knode's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Knode's trust account shall be forwarded to the U.S. District Court Clerk's Office under to 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid in full.

3. That Knode's claims against the state of South Dakota are dismissed for failure to state a claim upon which relief can be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

4. That Knode's claims against Kyler Pakarek are dismissed without prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

5. That Knode's Fourteenth Amendment claim against Joseph Erickson in his individual capacity survives screening and may be served.

6. The Clerk shall send a blank summons form and Marshal Service Form (Form USM-285) to Knode so that he may cause the complaint to be served upon defendant Erickson.

7. Knode shall complete and send the Clerk of Courts a separate summons and USM-285 form for the defendant. Upon receipt of the completed summons and USM-285 form, the Clerk of Court will issue the summons. If the completed summons and USM-285 form are not submitted as directed, the complaint may be dismissed.

8. The United States Marshal Service shall serve the completed summonses, together with a copy of the amended complaint and supplement (Dockets 3, 8) and this order, upon the defendant.

9. The defendant will serve and file an answer or responsive pleading to the amended complaints and supplement on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

10. The clerk of the court is directed to send a copy of this order to the

appropriate official at Knode's institution.

11. Knode will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

12. That Knode's motion for appointment of counsel (Docket 6) is denied.

13. That Knode's motion for copies (Docket 7) is granted in part and denied in part. The court denies entering an order forcing the SDDOC to change their limit on copies but allows Knode to complete service by email after his amended complaint and supplement have been served.

Dated April 24, 2020.

                    BY THE COURT:

                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE